## HAWK *v.* GREENSWEIG.

1. Where the vendor sues on his legal title, the vendee defends under the articles as on a bill to restrain the action at law, and less proof is required in such case than if the vendee were seeking specific performance; and the verdict is to be so moulded as to give the same relief which a court of equity would give under similar circumstances.
2. A vendor having agreed to convey, by a day certain, in consideration of certain acts to be done to himself, and payments to a third person, without tendering a deed, brought ejectment, alleging non-performance by vendee, who had entered and made improvements; the court should direct a conditional verdict in such amount as on performance would compensate the plaintiff for neglect of the vendee; to be levied on delivery of a deed to be so drafted as to secure all the covenants thereafter to be performed.
3. Where the action is in the nature of a bill, to compel performance of articles, or the vendee defends thereon in the nature of a bill to restrain the proceedings at law, delivery of a deed, though a condition precedent, need not be made or tendered before bringing suit. The court will direct a verdict, conditional on delivery of a proper conveyance.

ERROR to the Common Pleas of Monroe county.

*March* 19, 20, 21.—This was an ejectment on the legal title, which defendants resisted under articles, by which plaintiff covenanted to convey to W. and H. and N. H., guardian of A. and P. H., by deed, on or before the 1st September, 1839, and also to give the stock, with certain exceptions; in consideration of which defendants agreed to pay $900; $300 on the 1st April, 1842, 1845, and 1849, without interest, which was to be done by notes payable on those days, in favour of the sisters of defendants. Also to give plaintiff one third of the produce of the land, except the hay, and let him have the privilege of the house and cellar. Defendants were also to harvest and thrash all the grain sowed on the premises, and receive one-third as a compensation. Plaintiff offered to prove that defendants refused to give the third of the produce. That the land was not farmed in a proper manner, and that the privileges were interrupted. Defendants objected. Evidence was then given as to bad management, neglect of the farm, ill treatment of the plaintiff, and neglect to comply with the stipulations as to the produce. Defendants produced evidence in contradiction. The second exception was to evidence of the declarations of one defendant as to the profits of the land. Defendants proved that before the 1st of September plaintiff called on the person with whom the articles had been deposited, and directed him not to draw a deed, as he was not willing to give one, and endeavoured to have a return of the articles; that he did not then complain of the conduct of the defendants, but that his wife, who was their mother, had behaved badly. Defendants also showed they had made improvements, by clearing, fencing, and erecting a barn, &c. Much evidence was given on both sides as to the facts in controversy. The

court charged, in substance, that a previous tender by plaintiff of the deed was unnecessary, that his legal title would entitle him to recover, unless the defendants could make out such a case as would be sufficient in chancery to entitle them to a decree for performance, or an injunction to restrain the action at law. To do this, they must have substantially performed their contract. It was for the jury to decide this fact. An immaterial non-compliance was unimportant, but whether the defendants had shown an honest desire by their acts and declarations to live up to it. If the defendants have neglected to comply with the provisions of the articles by not rendering to plaintiff his portion of the produce, and by their acts have shown a determination to withhold from him that support which seems to have been the principal inducement to the bargain, plaintiff can treat it as abandoned. To the fourth point presented by defendants, he said, though he did not see how the point could arise, that a deed containing reservations according to the articles would not be such as they were bound to accept, as the covenants were of a personal nature. The jury found for plaintiff.

*Reeder*, for plaintiff in error.—The delivery of the deed was a condition precedent to any acts on our part, and no advantage could be taken for non-compliance by us, while he was in default, especially after he had refused to comply. But the court erred in leaving the question to the jury, whether we had complied or shown a disposition to trifle; for it was a matter of law for the court, as chancellor, whether, under the evidence, he would decree a performance. The danger of this is shown in 1 Story's Eq. sect. 19; 8 Watts, 378, 379; it is to make an ever-varying rule of equity. In equity non-performance of a condition precedent cannot be relieved against, but is held as strictly as at law. Jones *v.* Berkley, Doug. 665; Thorp *v.* Thorp, 1 Lord Raym. 662; 2 Story's Eq. sect. 773; Ca. temp. Finch, 445; Newlin Cont. 249; Sanders *v.* Pope, 12 Ves. 289; Hill *v.* Barclay, 16 Ves. 403. So there are cases in our own books which may be said to decide it, Williamson *v.* Develing, 9 Watts, 311; Brown *v.* Metz, 5 Watts, 164; Bossler *v.* McKnight, 2 Serg. & Rawle, 352.

*Ihrie* and *J. M. Porter*, contrà.—The question is, whether the court will not leave the defendants to their remedy at law; for to entitle him to a conveyance he must have done every thing on his part to be done, Griffith *v.* Corkran, 5 Binn. 105, where in our courts he is considered as possessing the legal title. The acts of the parties were the proper evidence to show an abandonment of the contract, so far as a determination not to perform it, Ong *v.* Campbell, 6 Watts, 396; and the previous tender was not essential on our part, Smith *v.* Webster,

2 Watts, 478, having been overruled in Brown v. Metz, 5 Watts, 164. [*Chief Justice.*—That case has been misunderstood. The syllabus is incorrect; without that the cases coincide. The question was not of tender but of right.] The court look to the condition of the parties at the time of the decree, in a case like this, Markley v. Schwartzlander, 8 Watts & Serg. 176; that is, of grace; 1 Watts, 401, Pennock v. Freeman. But there would be peculiar hardship in this case had defendants recovered. We should have been left to the personal cove-nant of one party; the other, having executed as guardian, was not bound, neither were his wards. [*Chief Justice* and *Kennedy*, J.—He would be personally bound.] There is a learned opinion of Luther Martin, in the Law Journal, contrà. [*Kennedy*, J.—It has been well settled since, that he is.] The party did not refuse to execute the deed to the party, nor request his declaration to be communicated; so it comes to this—would the court compel him to perform his contract, 2 Binn. 129; 17 Serg. & Rawle, 247; 2 P. Wms. 204; 7 Watts, 375, 144; 9 Watts, 16; 4 Whart. 230, where it is a gift in substance, and the small return has been refused, the party driven from his home by the conduct of the claimants?

*March* 30. Rogers, J., after stating the case.—The action is brought to rescind the contract and recover the possession, and the plaintiff rests his case on two grounds: First, That the contract was obtained by fraud and misrepresentation. Second, That the defend-ants have failed to comply with the terms of the agreement.

The first ground is easily disposed of. There is not a particle of evidence of fraud or misrepresentation, and so the court instructed the jury. That he may have been induced to enter into the arrangement by affection for his wife and step-children, and for this reason to have given them the property on more favourable terms than strangers, is very probable. But this is the extent of the plaintiff's proof on that head. The scrivener, who drew the agreement, and who seems to have been the confidential friend of all parties, states: That the plaintiff called on him alone to write the agreement; said he had made an ar-rangement to sell his land to the Hawks; that the boys lived with him, and were smart boys, and that he intended to give them a chance. Here we have his motives disclosed, which do honour to his good feel-ings. It was not done in a hurry, nor unadvisedly. The witness says, he had often spoken of the sale of the property afterwards and before; told him he intended to sell it to the children. This was a natural disposition, especially as he had no children of his own; but that there was any undue influence or imposition practised on him, by

any person, does not appear. We have assertions, surmises, and conjectures, to that effect, but there is no proof of these allegations. It is not even clear, under the circumstances, that it was an improvident contract; but that of itself would be no ground of relief, although in the case of an executory contract it may be urged as a reason for refusing the extraordinary interposition of a court of equity. That it does not answer the expectations of all the parties, may, perhaps, be as much attributable to the infirmity of the plaintiff's temper excited by domestic squabbles, as to any fault properly imputable to the defendants. But, be this as it may, we do not see the justice of visiting on the children the faults or misconduct of the mother. It will be remarked, she has an interest in the agreement, not only as a wife, but because the article contains a stipulation in her favour. It would be an easy and convenient mode to avoid an improvident or silly contract, if the quarrels of husband or wife generally could be used as a pretext for that purpose.

But is the plaintiff entitled to recover on the ground that the defendant has not complied with the contract?

The case, as it is presented by the evidence, is in the nature of a bill to rescind and cancel the agreement. The plaintiff brings ejectment, and the defendants ask the interposition of the court, by way of injunction, to restrain the plaintiff from making an improper use of his legal title in a court of law. It requires, I apprehend, less proof to induce a court of chancery to refuse its interposition on an application to enforce the specific performance of a contract, than it does to cancel and annul an agreement. When a contract is executory, and one party seeks a specific performance, the interference of the court is discretionary. The court will refuse its aid when the party seeking to enforce the agreement has neglected or refused to perform his part, or has been guilty of any trifling or delay. He is left to his remedy for damages at law. But where the contract has been in part executed, as by delivery of the possession, and the retention of it for several years, making improvements, they require more stringent proof of the abandonment of the contract, so as to permit the plaintiff to recover the possession as on a cancelled agreement. The rescission, or specific performance of contracts, is not a matter of right in either party, but is a matter of discretion in the court; not of arbitrary or capricious discretion, dependent on the mere pleasure of the judge, but of that sound and reasonable discretion which governs itself, as far as may be, by general rules and principles, but at the same time which grants or withholds relief, according to the circumstances of each particular case, where these rules and principles will furnish any exact measure of jus-

tice between the parties; 2 Story's Equity, sect. 742, and the authorities there cited. In short, a court of chancery will look to the whole case, when within their jurisdiction, and will make such a decree as to do justice between the parties.

Now what is this case? Although the vendee is forced to go into chancery to defend himself against the legal title; nevertheless, the case is not to be considered as in the nature of a bill for the specific performance of an executory contract, but as a bill in equity by the vendor to cancel the agreement. In this point of view, it is the duty of the vendor to satisfy the court that *he* has performed his agreement; that he has placed himself in such a condition to enable him, at law, to compel the defendant to perform his covenants. It would be unjust to annul the agreement when the default was on the side of the vendor, and where he could not for that reason sustain suit on the article of agreement; and this leads to the consideration of the agreement. From the contract, it is clear that the delivery of the deed is a condition precedent to the right to recover the money payable to the daughters, or to claim the one-third of the produce of the farm. If the vendor, instead of commencing an ejectment, had brought covenant, or if the guardian of Liffy and Catharine Hawk had brought an action of covenant, it would be necessary to aver and prove the execution and delivery of a deed, or a tender of a deed, for until this was done, the defendants are in no default. This action being in the nature of a bill in chancery, it was not necessary to tender a deed before the commencement of the suit, as has been repeatedly decided. But that is not the point here. The question is, can the vendor ask the court to annul or cancel a contract, when he has neither performed, nor offered to perform his part of it? Would it not be a sufficient answer to reply, True, I have not paid all the purchase money, nor have I performed other stipulations in the agreement, but my excuse is, that I am not bound to do so in consequence of your neglect, or refusal to give me a deed for the premises? Would a court of chancery cancel the contract, or would they content themselves with making a decree for the payment of the purchase money in arrear, to be paid on the execution and delivery of the deed? The truth is, it is not a case for rescission, but for compensation. The plaintiff agreed, in consideration of certain stipulations already enumerated, to give a deed for the premises to the defendants in fee, on or before the 1st September, 1839. This the plaintiff has not only neglected, but has refused to do; and what right has he to complain? The scrivener says that the plaintiff, before the time mentioned in the agreement, to wit: the 1st September, 1839, came to him and told him not to draw the deed; that he was not will-

ing to give the deed. He wished him to give up the article. The scrivener offered him a copy, with which he was not content. The reason of his refusal to give the deed, was not on account of any misconduct on the part of the children, nor any alleged failure to pay rent, nor on account of bad husbandry, but because he was displeased with his wife, who, to use his own language, had behaved nasty to him. If there was any failure whatever, it was after the time when, by the article, the vendor was bound to assure the title. Suppose there was a failure to pay rent, is hat a r ason for rescinding the contract at the instance of a person who was himself delinquent? Had the defendants altogether refused to pay, it would be no reason for cancelling the agreement; much less, when it appears that the default, if any, was partial only. It would seem to me to present a flimsy case for setting aside the agreement, even admitting the vendor had performed, or offered to perform, his part of it: but in the absence of all proof of the kind, and indeed, in the face of evidence, showing his unwillingness and refusal to perform his engagements, the plaintiff is not entitled to rescind the contract, and so the court ought to instruct the jury. But what would a court of chancery do? for this we can, and ought to do, through the instrumentality of a jury. A court of equity would estimate the rent so in arrear. This amount they would order the defendants to pay on the execution and delivery of the deed, according to the stipulations in the article. The form of the deed it is not necessary for us to prescribe, but the justice of the case would require that it should be such as to secure to the vendor the performance of all the covenants in his favour. Moreover, the court would order the defendants to pay or secure the $900, payable to the guardians of Liffy Hawk and Catharine Hawk. It must be a very peculiar case, where a court of chancery would rescind a contract when they cannot replace the parties in their original condition. This would be difficult, if not impossible, in the case before us. Besides, it would be unjust, if it can be avoided, to annul the contract, and would deprive the minors of the interest, without any default of theirs. As the avowed object was to cancel the contract, we think the court erred in admitting evidence to prove a refusal by the defendants, on the 1st September, 1839, to pay or perform the consideration contained in the article. It is, however, objectionable only in that aspect, because if the evidence is used as it may be, to enforce the contract, it would be material to the issue.

It may be proper to remark, that we agree with the court that the defendants were not bound to retain the saw-mill, and set it in a condition for the plaintiff to saw. The article imposes no such obligation

on the defendants. In conclusion, we see no reason to doubt the validity of the agreement, nor is there any evidence from which a jury would be permitted to infer a new contract.

Judgment reversed, and venire facias de novo awarded.